1 | ANDREW R. QUINIO, No. 288101
Email: AQuinio@pacificlegal.org
2 | Pacific Legal Foundation
555 Capitol Mall, Suite 1290
3 | Sacramento, California 95814
Telephone: (916) 419-7111
4 | Facsimile: (916) 419-7747

5 | HALEY DUTCH, Colo. Bar No. 58181*
Email: HDutch@pacificlegal.org
6 | Pacific Legal Foundation
3100 Clarendon Blvd., Suite 1000
7 | Arlington, Virginia 22201
Telephone: (202) 888-6881
8 | Facsimile: (916) 419-7747

9 | *Attorneys for Plaintiff G.H., a minor,
by Rebecca Hooley*
10 | **pro hac vice application forthcoming*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| G.H., a minor, by REBECCA HOOLEY the mother, legal guardian, and next friend of G.H. <br><br> Plaintiffs, <br><br> v. <br><br> UNIVERSITY OF CALIFORNIA BOARD OF REGENTS; UCSF BENIOFF CHILDREN'S HOSPITALS; MICHELLE EDNACOT, in her individual and official capacity as the CHAMPS program manager at UCSF BENIOFF CHILDREN'S HOSPITAL OAKLAND; DR. NICHOLAS HOLMES, in his individual and official capacity as President of UCSF BENIOFF CHILDREN'S HOSPITALS; and JANET REILLY, in her official capacity as President of the UNIVERSITY OF CALIFORNIA BOARD OF REGENTS, <br><br> Defendants. | No. 4:25-cv-01399 <br><br> **COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES** |

Complaint
No. 4:25-cv-01399                     1

# INTRODUCTION

1. This case concerns a bright, ambitious young woman who dreams of a future in medicine. G.H. is a 15-year-old student at Berkeley High School. She has perfect grades, is involved in theater, and is a member of the orchestra. She speaks Mandarin and works with children in a youth choir.

2. G.H.'s interest in healthcare is not a passing fad. She has long been inspired by her aunt, who is an assisted living nurse and who also cares for her special-needs brother. And G.H. is already preparing for a career in healthcare. She plans to take an EMT training class during her senior year, enroll in a class on medical terminology at her local community college, and eventually pursue a degree in medicine.

3. As part of G.H.'s plan to work in medicine, she applied to the Community Health and Adolescent Mentoring Program for Success (CHAMPS). CHAMPS is a renowned high-school internship program offered by UCSF Benioff Children's Hospital Oakland (UCSF Benioff). CHAMPS interns work closely with skilled healthcare practitioners in one of the best pediatric hospitals in the nation. This unique, once-in-a-lifetime opportunity could have set G.H. on the path to achieving her lifelong dream.

4. However, neither G.H.'s impressive background nor ardent interest in medicine mattered to UCSF Benioff. It rejected G.H. from CHAMPS because of her race and ethnicity.

5. UCSF Benioff offers the CHAMPS experience only to students of certain races. CHAMPS is restricted to minority students interested in healthcare careers. As a non-minority, G.H. is not one of the students that UCSF Benioff allows into CHAMPS.

6. G.H. did everything right. She worked tirelessly in school, dedicated countless hours to extracurricular activities, and poured her heart into her application. But instead of evaluating G.H. on her merit, UCSF Benioff judged G.H. by the color of her skin. When G.H. revealed she was white, UCSF Benioff slammed the door to this opportunity shut in her face.

7. G.H. has the right to the equal protection of the laws and to not be discriminated against on the basis of her race, as guaranteed by the Equal Protection Clause of the Fourteenth

Amendment to the U.S. Constitution; Title VI of the Civil Rights Act; and Section I, Article 31, of the California Constitution.

8. G.H. brings this lawsuit to assert her right to equal treatment and, above all, to be evaluated on her own merits—as an individual with unique talents and aspirations, not merely as a faceless member of her race.

## JURISDICTION AND VENUE

9. This action arises under the Fourteenth Amendment to the United States Constitution; federal civil rights statutes 42 U.S.C. §§ 1981, 1983, and 2000d *et seq.*; and Article I, Section 31 of the California Constitution.

10. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, because this action arises under the Constitution and laws of the United States.

11. The Court has supplemental jurisdiction to adjudicate Plaintiff's claims under Article I, Section 31 of the California Constitution pursuant to 28 U.S.C. § 1367(a). The events, parties, witnesses, and injuries that form the basis of the U.S. constitutional and federal civil rights claims are the same or related to the events, parties, witnesses, and injuries that form the basis of the state constitutional claims and derive from a common nucleus of operative facts.

12. This Court has authority to issue attorneys' fees and other necessary and proper relief under 28 U.S.C. §§ 2201 and 2202.

13. Venue is proper in this district under 28 U.S.C. §§ 1391(b)(1)–(2). The Defendant resides within this district and a substantial part of the events giving rise to this claim have occurred or will occur in the Northern District of California.

## DIVISIONAL ASSIGNMENT

14. Divisional Assignment as to Defendants is proper in this federal district court, pursuant to Civil Local Rule 3-2(c), which provides that a case shall be assigned ". . . to the court division serving the county in which the action arises. A civil action arises in the county where a substantial part of the events or omissions giving rise to the claim occurred, or where a substantial part of the property that is the subject of the action is situated."

15. In this action, Defendants' CHAMPS internship that Plaintiff G.H. applied to takes place at UCSF Benioff Children's Hospital Oakland, which is located in the County of Alameda. Defendants' consideration, determination, and rejection of Plaintiff's application to the CHAMPS internship took place at UCSF Benioff Children's Hospital Oakland. Plaintiff G.H. resides in Berkeley, which is also located in the County of Alameda. Alameda is one of the counties contained in this District, and it is the physical location where a substantial part of the events or omissions giving rise to the causes of action contained herein occurred.

## PARTIES

16. Plaintiff G.H. is a 15-year-old student at Berkeley High School. She resides in Berkeley, California, with her mother. G.H. is white. She applied to CHAMPS on October 27, 2024, and was not accepted.

17. Rebecca Hooley is G.H.'s mother, legal guardian, and next friend. She resides with G.H. in Berkeley, California.

18. Defendant UCSF Benioff Children's Hospital is a hospital system that includes UCSF Benioff Children's Hospital San Francisco and UCSF Benioff Children's Hospital Oakland. It is affiliated with UCSF Health.

19. Defendant University of California Board of Regents (UC Regents) is the sole corporate parent of UCSF Benioff Children's Hospital Oakland. The UC Regents are a state entity that governs the University of California, which the California Constitution establishes as a public trust.

20. Defendant Michelle Ednacot is the CHAMPS program manager at UCSF Benioff Children's Hospital Oakland. She is responsible for managing and overseeing CHAMPS, including its goals, application process, and selection criteria. Ms. Ednacot is sued in her individual and official capacities.

21. Defendant Dr. Nicholas Holmes is president of UCSF Benioff Children's Hospitals and senior vice president of children's services for UCSF Health. He is responsible for Benioff Children's Hospital San Francisco and Benioff Children's Hospital Oakland. He oversees strategic direction and operations for all pediatric clinical services across the health system,

including UCSF-owned and -operated sites and affiliated programs, including the CHAMPS program. Dr. Holmes is sued in his individual and official capacities.

22. Defendant Janet Reilly is the president of the UC Regents. As president of the UC Regents, Ms. Reilly has full authority and responsibility over the administration of all affairs and operations of the University of California. Ms. Reilly is sued in her official capacity.

## FACTUAL ALLEGATIONS

### I. UCSF Benioff Children's Hospital Oakland

23. UCSF Benioff Children's Hospital Oakland (UCSF Benioff) is a pediatric acute care hospital located in Oakland, California. Since 2014, it has been affiliated with UCSF Health, which is part of UC San Francisco, one of the top universities in the nation for health sciences research and higher education.

24. UC San Francisco physician-faculty provide over 90 percent of the care to UCSF Benioff patients. UC San Franciso is a public land-grant research university in the University of California system that the UC Regents govern. The UC Regents, through UCSF Health, are the sole corporate members of UCSF Benioff.

25. UCSF Benioff is a Federally Qualified Health Center. Approximately 70 percent of pediatric patients receiving care at UCSF Benioff are covered by Medi-Cal.

### II. The CHAMPS Internship

26. CHAMPS is UCSF Benioff's three-year internship program for minority high school students or students of color who are interested in health professions. The program was formerly known as "FACES for the Future."

27. During the CHAMPS internship, students shadow care providers during six- to eight-week clinical rotations, receive classroom education and training relevant to health care, and present projects that incorporate their extensive experience at the participating hospital and clinics.

28. Students accepted into CHAMPS receive assistance with their college applications, including SAT preparation, personal statement writing, and financial aid workshops. Students also earn a letter grade and school credit for their work.

Complaint
No. 4:25-cv-01399                                       5

29. CHAMPS aims to introduce high school students to health professions, assist them in getting into educational programs of their choice, and equip them with the skills to succeed in their pursuits.

30. CHAMPS's opportunities are intentionally and exclusively reserved for underrepresented minority students. It is expressly and strictly race-based.

31. CHAMPS's goal is to have the future medical community racially reflect the patient population. It aims for a healthcare workforce that "looks like those it serves."

32. In support of these racially restrictive goals, CHAMPS program manager Michelle Ednacot stated, "If that person looks and speaks like you and understands your culture, that builds trust. That's part of culturally-competent care."[1]

33. To apply for CHAMPS, students must submit an application and a school transcript prior to the second semester of their sophomore year. Each student must answer questions on the application about their citizenship status, career goals, life challenges, personal traits, and interest in health care.

34. The application also mandates that students include a photo of themselves and identify their race/ethnicity.

35. Students must commit 7 hours each week to the program during the academic school year for their sophomore, junior, and senior years. They must also pass a health clearance, which includes having various vaccinations and tuberculosis screenings prior to coming on site for the program.

36. Students and their parents or guardian then sign a Statement of Commitment with their applications, affirming that they understand the commitments and expectations of the internship program and can carry them out.

37. A select number of students are asked to sit for an interview.

///

---

[1] UCSF News, *Meet UCSF Benioff Oakland Hospital's Next-Gen Health Care Champs*, UCSF News (June 5, 2023), https://www.ucsf.edu/news/2023/06/425686/meet-ucsf-benioff-oakland-hospitals-next-gen-health-care-champs

### III. UCSF Benioff Rejects G.H. from CHAMPS Because of Her Race

38. G.H. submitted a complete application to UCSF Benioff on October 27, 2024, for admission to the CHAMPS internship. She included her high school transcript that showed her 4.0 GPA, a photograph, and the signed Statement of Commitment.

39. In her application, G.H. described how her strong ability to connect with people has led her to help and comfort those in need. She wrote about moments when she assisted a child with a disability through his performance at her theater camp, cared for her grandmother in times of distress, and aided a stranger in an emergency.

40. G.H. explained how she is inspired to help others through healthcare by her aunt, a registered nurse. G.H. further described her own personal challenges as a child and how they shaped her resilience against future obstacles.

41. Under the section for "Race/Ethnicity," G.H. could check boxes for "Asian," "Black/African-American," "Chicanx/Hispanic/Latinx," "Native American/Alaskan," "Native Hawaiian/Pacific Islander," and "Not listed." G.H. checked "Not listed."

42. On December 12, 2024, G.H. was interviewed for the program. The interviewer immediately started the interview noting that G.H. did not list her race or ethnicity in her application. She pressed G.H. to identify her race, and G.H. answered that she is white.

43. On December 17, 2024, during the week of her final exams, G.H. was informed that she was not selected for the CHAMPS internship.

44. UCSF Benioff rejected G.H. because she was not the right race for the CHAMPS internship. G.H.'s impressive background, high GPA, and passion for helping others through healthcare made her a strong candidate for the internship, but UCSF Benioff's race-conscious admissions meant it could not even consider G.H.'s qualifications.

45. G.H. would have been accepted and admitted to CHAMPS but for UCSF Benioff's race-based admissions policy.

/ / /

**IV. The Impact of UCSF Benioff's Racial Discrimination**

46. The crushing disappointment and heartbreak G.H. experienced cannot be overstated. UCSF Benioff disregarded G.H.'s qualifications, achievements, and aspirations in favor of an unconstitutional race-based exclusion.

47. G.H. has lost a once-in-a-lifetime opportunity to gain invaluable medical experience, network with professionals, and enhance her academic profile, all of which would have significantly boosted her future career prospects.

48. The rejection has left G.H. feeling humiliated and demoralized.

49. G.H. and her family have invested significant resources, including time and money, into preparing for this opportunity—expenses that have now gone to waste.

50. The intentional and systematic discrimination carried out by Defendants has caused G.H. substantial emotional and psychological harm, leaving her with a profound sense of injustice and disillusionment with institutions that should foster inclusion and merit-based opportunities.

## CLAIMS FOR RELIEF

### First Cause of Action

### (42 U.S.C. § 1983 – Violation of the Equal Protection Clause)

51. Plaintiff incorporates and realleges each and every allegation contained in the preceding paragraphs of this Complaint.

52. The Fourteenth Amendment to the United States Constitution provides: "No State shall make or enforce any law which shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

53. 42 U.S.C. § 1983 provides that: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ."

54. Defendants Michelle Ednacot, CHAMPS program manager at UCSF Benioff; Nicholas Holmes, President of UCSF Benioff Children's Hospitals; and Janet Reilly, President of the UC Regents are each a "person" within the meaning of 42 U.S.C. § 1983.

55. Michelle Ednacot oversaw the application of CHAMPS's discriminatory selection criteria on students, including G.H., even though she knew or should have reasonably known that the criteria violated G.H.'s right to equal protection of the law. Nicholas Holmes, as President of UCSF Benioff, knew or reasonably should have known of CHAMPS's unlawful discriminatory racial preferences and knowingly refused to discontinue the preferences.

56. Defendants have acted and are acting "under color of state law" within the meaning of Section 1983.

57. CHAMPS discriminates on the basis of race in violation of the Equal Protection Clause.

58. CHAMPS is subject to strict scrutiny because it categorizes individuals on the basis of race.

59. CHAMPS's racial classifications do not serve a compelling government interest.

60. Defendants have not specifically identified any racial discrimination to be remedied by the CHAMPS internship.

61. Defendants cannot identify any statute or constitutional provision that would be violated in the absence of its race-based CHAMPS internship.

62. Defendants lack a strong basis in evidence to conclude that remedial action is necessary regarding any racial discrimination in the State of California.

63. Even if Defendants could demonstrate that CHAMPS's racial classifications serve a compelling government interest, Defendants cannot prove that the racial exclusivity mandated by CHAMPS is narrowly tailored towards advancing that interest.

64. Defendants have not attempted to implement any race-neutral alternatives and CHAMPS does not provide any end date for its race-based measures.

65. The CHAMPS internship's racial classifications use race as a negative.

66. The CHAMPS internship's racial classifications use race as a stereotype.

67. CHAMPS applicants and G.H. have been and will continue to be harmed by Defendants' racial discrimination.

## SECOND CAUSE OF ACTION

## (42 U.S.C. § 1981 – Deprivation of Civil Rights Based on Race)

68. Plaintiff incorporates and realleges each and every allegation contained in the preceding paragraphs of this Complaint.

69. Section 1981 prohibits discrimination on the basis of race and protects the right of all persons in every State to make and enforce contracts and to the full and equal benefit of all laws and proceedings for the security of persons and property.

70. Defendants violated Section 1981 by purposefully and willfully denying G.H. the equal opportunity to be considered for admission to the CHAMPS internship and to make and enforce a contract with UCSF Benioff because of G.H.'s race.

71. UCSF Benioff's racial discrimination interfered with G.H.'s right to contract for educational benefits on an equal basis.

72. Defendants' actions were in accordance with an official policy and custom of UCSF Benioff, specifically and not limited to UCSF Benioff's racial preference for minority students in its CHAMPS internship.

73. Defendants' actions caused the deprivation of G.H.'s rights.

74. The United States Supreme Court has held that § 1981 protects all persons—regardless of their race—from "discrimination in the making or enforcement of contracts. . . ." *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 295, 96 S. Ct. 2574, 49 L. Ed. 2d. 493 (1976).

75. G.H. is a member of the racial category that Defendants disfavor for admission to the CHAMPS internship.

76. Defendants were aware of G.H.'s race at the time Defendants considered G.H.'s application for admission to the CHAMPS internship and carried out the race-based preferences in determining which students to accept to the program.

77. Defendants' deprivation of Plaintiff's rights occurred due to Plaintiff's race. Defendants intended to discriminate and purposefully discriminated against G.H. on the basis of race.

78. Persons who suffer discrimination in violation of Section 1981 are entitled to both equitable and legal relief, including damages.

79. G.H. has suffered damages as a result of Defendants' discriminatory actions.

**THIRD CAUSE OF ACTION**

**(42 U.S.C. § 2000d – Intentional Discrimination in Violation of Title VI**

**of the 1964 Civil Rights Act)**

80. Plaintiff incorporates and realleges each and every allegation contained in the preceding paragraphs of this Complaint.

81. Title VI of the 1964 Civil Rights Act (42 U.S.C. §2000d) provides, in relevant part: "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."

82. UCSF Benioff and UC Regents, recipients of federal funds, violate Title VI, 42 U.S.C. § 2000(d) *et seq.*, by promulgating and implementing a policy which racially discriminates against students who seek admission to the CHAMPS internship.

83. Defendants' actions were made under color of law.

84. Title VI is privately enforceable.

85. Discrimination that violates the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution constitutes a violation of Title VI when committed by an institution that accepts federal funds.

86. An institution's use of race or ethnicity that is in any way motivated by prejudice or a stereotype against a particular group violates Title VI.

87. Defendants have intentionally discriminated against G.H. for admission to CHAMPS on the basis of race or ethnicity based on prejudicial and stereotypical assumptions about her qualifications and circumstances.

88. G.H. has been and will continue to be injured because Defendants have denied and will continue to deny her the opportunity to compete for admission to CHAMPS on equal footing with other applicants.

89. Plaintiff is entitled to attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

**FOURTH CLAIM FOR RELIEF**

**(Article I, Section 31 of the California Constitution – Discriminatory and Preferential Treatment on the Basis of Race)**

90. Plaintiff incorporates and realleges each and every allegation contained in the preceding paragraphs of this Complaint.

91. Article I, Section 31 of the California Constitution provides that the State of California and its counties and other subdivisions "shall not discriminate against, or grant preferential treatment to, any individual or group on the basis of race, sex, color, ethnicity, or national origin in the operation of public employment, public education, or public contracting." Cal. Const. art. I, § 31(a), (f).

92. The CHAMPS internship discriminates against and grants preferential treatment to individuals on the basis of race.

93. The CHAMPS internship is not required by "any court order or consent decree" in force as of November 6, 1996. Cal. Const. art. I, § 31(d).

94. The CHAMPS internship is not necessary to "establish or maintain eligibility for any federal program, where ineligibility would result in a loss of federal funds to the State." Cal. Const. art. I, § 31(e).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests the following relief:

1. A declaratory judgment declaring that the racial preferences in Defendants' CHAMPS program violate the Fourteenth Amendment to the United States Constitution; Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq*; federal civil rights statutes 42 U.S.C. §§ 1981 and 1983; and Article I, Section 31 of the California Constitution;

2. Compensatory damages;

3. An award of attorney's fees and costs in this action pursuant to 42 U.S.C. § 1988;

4. An award of nominal damages in the amount of $1.00; and

5. An award of any further legal or equitable relief this Court may deem just and proper.

DATED: February 11, 2025.

                                  Respectfully submitted,

                                  ANDREW R. QUINIO
                                  HALEY DUTCH*

                              By  /s/ *Andrew R. Quinio*
                                      ANDREW R. QUINIO

                              *Attorneys for Plaintiff*
                              **pro hac vice application forthcoming*